IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 25-cv-01603-STV

80STEES.COM, INC.,

    Plaintiff,

v.

JERSEY NATION PTY., LTD., and
SHAKIR HAMMADI,

    Defendants.

_____

**ORDER**
_____

Entered by Chief Magistrate Judge Scott T. Varholak

This matter comes before the Court on Plaintiff's Motion for Order Allowing Alternative Service of Process (the "Motion"). [#11] The Motion seeks leave to serve Defendants: 1) by email via Defendant Jersey Nation Pty, Ltd.'s ("Defendant Jersey Nation") contact email address on their website; 2) by emailing Defendants' attorneys; 3) by mail to Defendant Jersey Nation's registered corporate address; and 4) by delivery to Defendant Hammadi's listed residential address. [*Id.*] This Court has carefully considered the Motion, the entire case file, and the applicable case law, and has determined that oral argument would not materially assist in the disposition of the Motion. For the following reasons, the Motion is **GRANTED.**

I.    **BACKGROUND**

Plaintiff brings this action against Defendant Jersey Nation and its founder, sole director, and sole shareholder, Shakir Hammadi, for copyright infringement. [#1] Plaintiff

1

previously filed a lawsuit against Defendants in the U.S. District Court for the Western District of Michigan on December 20, 2024 (Case No. 1:24-cv-01335) (the "Michigan Litigation"). [*Id*. at ¶ 47] There, Plaintiff claimed it diligently attempted to serve both Defendants at the registered address for Defendant Jersey Nation in Queensland, Australia. [*Id*. at ¶ 48] Plaintiff ran skip trace searches through public records to locate addresses for Defendants [#11-8] and engaged an Australian process server who successfully personally delivered the summons and complaint to the then-registered business address of Jersey Nation [#1 at ¶ 50]. However, Defendants claimed improper service and then changed their address. [*Id*. at ¶ 51] Over the course of the Michigan Litigation, Defendant Jersey Nation conceded—through its prior counsel—that it would not contest jurisdiction in Colorado, while Defendant Hammadi reserved the right to challenge jurisdiction where appropriate. [*Id*. at ¶ 53; #11-6 at 3] In the same communication, Defendants' counsel informed Plaintiff that he was unable to accept service on their behalf. [#11-6 at 3] In reliance upon Defendant Jersey Nation's concession, Plaintiff voluntarily dismissed the Michigan case [#1 at ¶ 56] and filed the case in Colorado on May 21, 2025 [*See generally* #1].

In the instant Motion, Plaintiff claims it has been attempting to serve Defendants for six months with no success. [#11 at 1-2] Specifically, Plaintiff hired the same Australian process server it used to serve the Michigan Litigation complaint and summons. [#11-2 at ¶ 18] That process server confirmed Defendant Jersey Nation's new Queensland, Australia address and attempted to serve Defendants at that address on June 11, 2025, but was unable to effectuate such service because the address was a mail-only lockbox at which hand deliveries were not accepted. [#11-2 at 6, ¶ 20] The

process server also attempted service at a personal address associated with Defendant Hammadi but was informed that Defendant Hammadi had not lived there for several months. [*Id*. at ¶ 21] She attempted service at another address and found that Defendant Hammadi did not reside at that property. [*Id*. at ¶ 23]

On July 22, 2025, Plaintiff filed the instant motion for alternate service. [#11] In the Motion, Plaintiff seeks leave of this Court to serve Defendants by: 1) email to Defendants' business email address at info@thejerseynation.com[1]; 2) email to Defendants' prior United States-based attorneys; 3) postal mail to Defendant Jersey Nation's registered corporate address; and 4) delivering or leaving documents at Defendant Hammadi's residential address. [*Id*. at 6-7]

## II.   DISCUSSION

Federal Rule of Civil Procedure 4(h) sets forth the acceptable methods for service of process for corporations. Rule 4(h) provides, "[u]nless federal law provides otherwise," a corporation that is to be served "at a place not within any judicial district of the United States" must be served "in any manner prescribed by Rule 4(f) for serving an individual, except personal delivery under (f)(2)(C)(i)." Fed. R. Civ. P. 4(h)(2). Federal Rule of Civil Procedure 4(f) provides that, unless federal law requires otherwise, "an individual . . . may be served at a place not within any judicial district of the United States:"

---

[1] Plaintiff identifies the relevant email address in their Motion as "support@thejerseynation.com," [#11 at 5, 7, 11], but includes screenshots from Defendants' website that show "info@thejerseynation.com" as the appropriate email address. [*Id*. at 6] The Court has likewise visited Defendant Jersey Nation's website and it lists info@thejerseynation.com as the correct contact email address. https://www.thejerseynation.com (last accessed August 18, 2025). The Court therefore proceeds with the latter as the accurate address.

3

> (1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents;
>
> (2) if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice . . . ;
>
> (3) by other means not prohibited by international agreement, as the court orders.

Fed. R. Civ. P. 4(f). "Courts have held that Rule 4(f) does not create a hierarchy among its subsections dictating that one form of service is favored over another." *Garb Oil & Power Corp. v. Titan Int'l Sec., Inc.,* No. 2:17-cv-00762-PMW, 2018 WL 4401737, at *1 (D. Utah Sept. 14, 2018) (collecting cases). "Accordingly, 'service of process under Rule 4(f)(3) is neither a last resort nor extraordinary relief.'" *Id*. (quoting *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1015 (9th Cir. 2002)). Nonetheless, to comply with due process, any means of service must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

The United States and Australia are signatories to the Hague Service Convention. *See Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters*, https://www.hcch.net/en/instruments/conventions/status-table/?cid=17 (last accessed August 18, 2025). "Some courts within the District of Colorado have concluded that 'prior to allowing substituted service under Rule 4(f)(3) the court may require that plaintiff show that he made reasonable efforts to serve the defendant [pursuant to the Hague Service Convention] and that the court's intervention will avoid further unduly burdensome or futile

efforts at service.'" *Your True Nature, Inc.*, 2023 WL 2355926, at *2 (quoting *Clancy Sys. Int'l, Inc. v. Image Sensing Sys., Inc.*, No. 16-cv-01848-CMA-KMT, 2016 WL 9344080, at *3 (D. Colo. Oct. 14, 2016)). "However, there is nothing within the text of Rule 4 that 'suggests such a restrictive view of the availability of alternative service.'" *Id*. (quoting *Beijing QIYI Century Sci. & Tech. Co., Ltd. v. Shenzhen QiYi Innovations Tech. Co.,* No. 18-cv-02360-RM-STV, 2018 WL 6589806, at *4 (D. Colo. Dec. 13. 2018)).

In Queensland, Australia, personal service on an individual is effected by locating the person to be served and identifying them and handing the documents directly to them. *See Australia – Central Authority & Practical Information, Hague Conference on Private International Law*, https://www.hcch.net/en/states/authorities/details3/?aid=878 (last accessed August 18, 2025). For corporations, service is usually completed by delivering the documents to someone at the company's registered address. *Id*. If the recipient is an unincorporated business, service is made by leaving the documents with a person at the business address who appears to be in control or management. *Id*. Australia explicitly allows for service through private process servers, diplomatic channels, and local agents. *See Weiss v. Reilly*, No. CV 16-02004-BRO (AJWx), 2017 WL 11635469, at *3 (C.D. Cal. Jan. 10, 2017) (citing official guidance from the Australian Attorney–General's Department).

Here, the Court is satisfied that due diligence has been used to attempt personal service and that further attempts to obtain timely personal service would be to no avail. As outlined above, Plaintiffs have made concerted efforts to serve Defendants but have been unsuccessful. Accordingly, the Court must determine the availability of alternate

5

methods of service, beginning with Plaintiff's request to serve Defendants via email to their former attorneys.

Plaintiff requests to serve Defendants via email to Brandon Schumacher and Front Range Legal Services, the attorneys that previously represented Defendants in the Michigan Litigation. [#11 at 6] The Court must first determine whether email is a viable method of alternate service in this case or whether it is prohibited by international agreement. Article 10 of the Hague Convention notes that: "[p]rovided the State of destination does not object, the present Convention shall not interfere with . . . the freedom to send judicial documents, by postal channels, directly to persons abroad." Hague Convention, Art. 10, 20 U.S.T. 361 (1969). Article 10 does not mention service by email or other electronic communications, but courts have concluded that the term "postal channels" encompasses email. *See, e.g., Cadence Design Sys., Inc. v. Fenda USA Inc.*, 734 F.Supp.3d 960, 963-64 (N.D. Cal. 2024); *Smart Study Co., Ltd. v. Acuteye-Us*, 620 F. Supp. 3d 1382, 1395 (S.D.N.Y. 2022), a*ppeal dismissed sub nom. Smart Study Co. v. HAPPY PARTY-001*, 2023 WL 3220461 (2d Cir. May 3, 2023).

Australia does not object to Article 10 of the Hague Service Convention where service by postal channels is permitted in the receiving jurisdiction, but it requires that such service be conducted via registered mail. *See Australia – Central Authority & Practical Information, Hague Conference on Private International Law*, https://www.hcch.net/en/states/authorities/details3/?aid=878 (last accessed August 18, 2025). And courts in the United States have rejected the idea that Australia's registered mail requirement serves as an objection to or limitation on Article 10, and have therefore concluded that service by email is permissible in Australia. *See*, *e.g., Hayward Indus.,*

6

*Inc. v. CompuPool Prods.*, No. 22-7330 (KM) (MAH), 2023 WL 3736216, at *6 (D.N.J. May 31, 2023). ("[C]ourts have held that service via email is proper even where a signatory to the Hague Convention has objected to service through postal mail. Accordingly, the Court concludes there is no international agreement prohibiting service via email in Australia." (internal citation omitted)); *Thunder Studios, Inc. v. Kazal*, No. CV 17-00871-AB (SSx), 2017 WL 10434398, at *3 (C.D. Cal. May 26, 2017) ("Australia's objection as it relates to service via 'postal channels' is limited to physical documents delivered by a postal service. Based on the foregoing, the Court finds that, under the circumstances in the instant case, email service is not prohibited by international agreement."); *see also AMTO, LLC v. Bedford Asset Mgmt., LLC*, No. 14-CV-9913, 2015 U.S. Dist. LEXIS 70577 at *19-28 (S.D.N.Y. May 29, 2015) (holding that Russia's objection to article 10 precludes service through the mail but does not preclude service via email, in the absence of an explicit objection to such means of service); *Gurung v. Malhotra*, 279 F.R.D. 215, 220 (S.D.N.Y. 2011) (authorizing email service despite India's objection to Article 10(a), because "India did not expressly object to electronic mail as a means of service").  The Court thus finds that international agreement does not prohibit email service on Australian defendants, thus making email service an available method of service pursuant to Rule 4(f)(3) in this case.  The Court further concludes that email service is a reasonable means of alternative service since Plaintiff has made reasonable efforts to effectuate service of process under the Hague Convention.  *See Maverick Trading, Inc. v. Moore*, No. 2:19-cv-00203-TC-PMW, 2019 WL 13219593, at *2 (D. Utah Aug. 8, 2019) (authorizing alternative service by email, private messages via Twitter account, and website via the contact submission page); *F.T.C. v. PCCare247 Inc.*, No.

7

12 Civ. 7189 (PAE), 2013 WL 841037, at *4 (S.D.N.Y. Mar. 7, 2013) (authorizing alternative service by email and Facebook).

Having determined that service by email is permissible, the Court next considers whether Defendants' former attorneys can be served in a manner that effectively constitutes service on Defendants.  There are several examples of when substituted service on a defendant's current or former attorney is appropriate to effectuate personal service on the defendant.  If an attorney is currently representing a defendant, it is reasonable to infer that the attorney will give actual notice of service to that defendant, and substituted service on that attorney is therefore appropriate.  *Two Rivers Water & Farming Co. v. Am. 2030 Cap. Ltd.*, No. 19-cv-01640-CMA-STV, 2019 WL 5535227, at *3 (D. Colo. Oct. 25, 2019) (citing *Contrada, Inc. v. Parsley*, No. 1:10-cv-00646-WYD-CBS, 2010 WL 2943428, (D. Colo. July 21, 2010)).  Substituted service on a former attorney can also be granted when such service will reasonably apprise the defendant of the lawsuit.  *Sandia Lab'y Fed. Credit Union v. Burg*, No. 1:24-cv-01443-SKC-STV, 2024 WL 4728025, at *4 (D. Colo. Nov. 8, 2024) (finding substitute service on Defendant's former attorney appropriate because it would reasonably give Defendant notice of the lawsuit and it comports with due process).  Indeed, service upon an attorney, who may or may not have represented the defendant but has had dealings with them, can also be appropriate if the attorney has already given actual notice of service to the defendant. *JDK LLC v. Hodge*, No. 15-cv-00494-NYW, 2015 WL 2455504, at *2 (D. Colo. May 22, 2015) (ordering substituted service on an attorney who had potentially represented defendants in settlement negotiations relating to the lawsuit and had provided actual notice of the lawsuit to them).

Here, Plaintiff asserts that service on Attorney Brandon Schumacher of Foster, Swift, Collins & Smith, P.C. and on attorneys from Front Range Legal Services[2] ("Front Range") is reasonably calculated to apprise Defendants of this lawsuit, as they currently or previously represented Defendants. [#11 at 7] Specifically, Plaintiff contends that Attorney Schumacher represented Defendants in the related Michigan Litigation, as demonstrated by case filings and correspondence [##11-4, 11-6] and the Front Range attorneys represented Defendants in responding to Plaintiff's cease-and-desist letters in October 2024 [#11 at 11; #11-9].[3]

The Court finds the collective attorneys' prior representation of Defendants in the Michigan Litigation is sufficiently related to the present matter to conclude that service on the same attorneys is likely to apprise Defendants of this action. First, the Court finds that service on Attorney Schumacher is reasonably calculated to apprise both Defendants of this action. Although Defendant Hammadi is not formally listed in the filings Plaintiff provided as being represented by Attorney Schumacher [#11-4], the correspondence between Plaintiff and Attorney Schumacher demonstrates that he acted on Mr. Hammadi's behalf. For example, Attorney Schumacher stated: "Shakir Hammadi reserves all rights to challenge jurisdiction where appropriate, and will not give . . .

---

[2] According to Plaintiff's evidence, the attorneys from Front Range Legal Services appear to be Galen Peterson and John Arsenault. [#11-9]

[3] In February 2025, the Front Range attorneys informed Plaintiff that they did not represent Defendants for the purposes of the litigation. [## 11 at 3; 11-9] Were the Front Range attorneys the only attorneys being provided with notification of this action, the Court would have some concerns. But, as explained below, Attorney Schumacher is also being provided notice and the Court finds that providing Attorney Schumacher with notice adequately guarantees that Defendants will receive notice of this action. Out of an abundance of caution, the Court will also order notice to be provided to the Front Range attorneys to further guarantee that Defendants receive notice of this action.

assurance [that he will not contest jurisdiction in Colorado]," and "[n]either Jersey Nation nor Mr. Hammadi will agree to a waiver of service." [#11-6 at 3] These statements indicate to the Court that Attorney Schumacher was authorized to communicate with Plaintiff on Mr. Hammadi's behalf. Notably, at no point in the correspondence did Schumacher disclaim representation of Mr. Hammadi, even when specifically asked about him. Accordingly, the Court finds that service on Attorney Schumacher is reasonably calculated to effectuate service on both Defendants.

In this case, Defendants knew that the Michigan Litigation was being dismissed so that it could be pursued in this District. Attorney Schumacher represented Defendant Jersey Nation in the Michigan Litigation and was acting on behalf of both Defendants. The Court has little doubt that Attorney Schumacher will notify Defendants of the instant litigation—which, again, they knew was forthcoming. Thus, service on Attorney Schumacher, coupled with the other methods of notification being ordered below, is reasonably calculated to apprise Defendants of this litigation, and thus comports with due process. Accordingly, the Court GRANTS the Motion as detailed below.

### III. CONCLUSION

Accordingly, **IT IS ORDERED** as follows:

1. Plaintiff's Motion [#11] is **GRANTED**;
2. Plaintiff is authorized to serve Defendants Jersey Nation Pty., LTD., and Shakir Hammadi, via email to their former attorneys, Brandon Schumacher at bschumacher@fosterswift.com; Galen Peterson at galen.peterson@frontrangelegalservices.com; and John Arsenault at

john.arsenault@frontrangelegalservices.com. In addition to the documents required to effectuate service, Plaintiff shall also include a copy of this Order.

3. Plaintiff shall further serve Defendants with the documents required to effectuate service, and a copy of this Order via the following methods:

   (a)   Email to Defendant Jersey Nation's publicly listed email address, info@thejerseynation.com, as referenced in the Motion;

   (b)   Postal mail to Defendant Jersey Nation's registered corporate address, Unit 192, 10 Albert Avenue, Broadbeach QLD 4218, Australia, as referenced in the Motion; and

   (c)   Delivery to Defendant Hammadi's listed residential address, 5 Allawah Street, Bundall QLD 4217, as referenced in the Motion.

4. Plaintiff shall promptly file a status report informing the Court when such service is accomplished.

DATED:  August 18, 2025                        BY THE COURT:

                                               s/Scott T. Varholak
                                               Chief United States Magistrate Judge