# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF COLORADO

Civil Action No.  1:25-cv-01603-STV

80STEE.COM, INC.,

    Plaintiff,

v.

JERSEY NATION PTY., LTD.; and
SHAKIR HAMMADI,

    Defendants.

_____

# ORDER
_____

Chief Magistrate Judge Scott T.  Varholak

    This matter is before the Court on Defendant Shakir Hammadi's Fed. R. Civ. P. 12(b)(2) Motion to Dismiss Plaintiff's Complaint (the "Rule 12(b)(2) Motion") [#15] and Defendant Shakir Hammadi's and Jersey Nation Pty. Ltd.'s Joint Fed. R. Civ. P. 12(b)(6) Motion to Dismiss Plaintiff's Complaint (the "Rule 12(b)(6) Motion") [#16] (collectively, the "Motions").  The parties have consented to proceed before the undersigned United States Magistrate Judge for all proceedings, including entry of a final judgment.  [##26, 27]  The Court has carefully considered the Motions and related briefing, the entire case file and the applicable case law, and has determined that oral argument would not materially assist in the disposition of the Motions.  For the following reasons, the Rule 12(b)(2) Motion is **GRANTED** and the Rule 12(b)(6) Motion is **DENIED** to the extent that it seeks to dismiss the claim against Defendant Jersey Nation Pty., Ltd. ("Jersey Nation").  To the extent the Rule 12(b)(6) Motion seeks to dismiss the claim against Defendant Hammadi, it is **DENIED AS MOOT**.

## I.    BACKGROUND[1]

Plaintiff operates a website that sells custom apparel, such as t-shirts and jerseys. [#1 at ¶¶ 13-14]  In November 2018, Plaintiff designed a hockey jersey ("Plaintiff's Jersey") inspired by the film *National Lampoon's Christmas Vacation* ("*Christmas Vacation*").  [*Id.* at ¶ 14]  Plaintiff's Jersey features a moose head with a Christmas stocking cap, the name "Griswold" on the back, the number "00" on the back and sleeves, black and red striping on the arms and lower portion of the jersey, and an image of a Christmas tree atop a station wagon superimposed in front of a yellow "G" on both shoulders.  [*Id.*]  Plaintiff's Jersey is named "Christmas Vacation Griswold Hockey Jersey" and was sold for the first time on July 9, 2019.  [*Id.* at ¶¶ 16, 24]  It remains available on Plaintiff's website today. [*Id.* at ¶ 17]  Plaintiff owns a federal copyright registration on this jersey.  [*Id.* at ¶ 18]

Defendant Jersey Nation is an Australian private company.  [*Id.* at ¶ 2]  Defendant Hammadi resides in Australia and is the CEO and sole member of Defendant Jersey Nation.  [*Id.* at ¶¶ 3-4]  Defendants operate a website that sells custom apparel with a specific focus on sports jerseys.  [*Id.* at ¶ 19]  Like Plaintiff, Defendants sell a moose-themed hockey jersey ("Defendants' Jersey").  [*Id.* at ¶ 23]  Defendants' Jersey features a moose head with a Christmas stocking cap, the name "Griswold" on the back, the number "00" on the back and sleeves, and black and red striping on the arms and lower portion of the jersey.  [*Id.* at ¶ 25]  Defendants' Jersey is named "Christmas Style

---

[1] The facts are drawn from the allegations in Plaintiff's Complaint (the "Complaint") [#1], which must be taken as true when considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  *Wilson v. Montano*, 715 F.3d 847, 850 n.1 (10th Cir. 2013) (citing *Brown v. Montoya*, 662 F.3d 1152, 1162 (10th Cir. 2011)).

'Griswold' Hockey Jersey." [*Id.* at ¶ 24] The URL handle for Defendants' Jersey is nearly identical to the URL handle for Plaintiff's Jersey. [*Id.* at ¶ 27]

Defendants display Defendants' Jersey on their website's homepage and list it as a best seller. [*Id.* at ¶ 28] Defendants also included images of Defendants' Jersey in a Black Friday sale advertisement. [*Id.*] Defendants marketed Defendants' Jersey by using targeted advertising through Google, including to users located in Colorado. [*Id.* at ¶ 29] At the time the Complaint was filed, Defendants' Jersey had over 600 reviews on Defendants' website. [*Id.* at ¶ 32] Plaintiff has not licensed its copyrights in Plaintiff's Jersey to Defendants, nor do Defendants have permission to create substantially similar or derivative works. [*Id.* at ¶¶ 33-34]

Plaintiff has also sold a "Chicago Sh*tters Jersey" which features a silhouette resembling Uncle Eddie from *Christmas Vacation* holding a hose and raising a can inside of a triangle on the front of the jersey, with a cigar and beer can creating an "x" pattern on the sleeve ("Plaintiff's Chicago Jersey"). [*Id.* at ¶ 37] Defendants also sell a "Chicago Sh*tters Jersey" which features a silhouette resembling Uncle Eddie from *Christmas Vacation* holding a hose and raising a can inside of a pointed shape on the front of the jersey, with a cigar and beer can creating an "x" pattern on the sleeve ("Defendants' Chicago Jersey").[2] [*Id.*] Defendants' Chicago Jersey has a product name that is similar to Plaintiff's Chicago Jersey's product name. [*Id.* at ¶ 38]

On October 8, 2024, Plaintiff sent a cease-and-desist letter to Defendants demanding they stop infringing the copyright on Plaintiff's Jersey. [*Id.* at ¶ 42] Defendants

---

[2] In this action, Plaintiff does not allege copyright infringement with respect to Defendants' Chicago Jersey.

acknowledged that they received the letter and continued to display Defendants' Jersey and offer it for sale. [*Id.* at ¶¶ 43-44] Defendants were still offering Defendants' Jersey for sale at the time the Complaint was filed. [*Id.* at ¶ 44] Prior to receiving the cease-and-desist letter, Defendants' Jersey's product name and URL handle were identical to that of Plaintiff's Jersey's product name and product page URL handle. [*Id.* at ¶ 46] After receiving the letter, Defendants changed the product name and URL handle such that they became slightly different from Plaintiff's Jersey's product name and URL handle. [*Id.* at ¶ 46]

In December 2024, Plaintiff filed a lawsuit against Defendants in the United States District Court for the Western District of Michigan (the "Michigan Litigation"). [*Id.* at ¶ 47] Upon filing a complaint in the Michigan Litigation, Plaintiff attempted to serve Defendants at the registered address for Jersey Nation in Queensland, Australia. [*Id.* at ¶ 48] Plaintiff engaged an Australian process server who delivered the summons and complaint to the registered address. [*Id.* at ¶ 50] Defendants contested service, denied knowledge of the lawsuit, and Defendant Jersey Nation's registered business address was changed. [*Id.* at ¶¶ 50-51] Defendants moved to dismiss the Michigan Litigation based on lack of jurisdiction but conceded that Defendant Jersey Nation was subject to personal jurisdiction in Colorado. [*Id.* at ¶¶ 52-53] Plaintiff voluntarily dismissed the Michigan Litigation without prejudice. [*Id.* at ¶ 56]

Plaintiff initiated this action in this district on May 21, 2025. [#1] Plaintiff's Complaint alleges a single claim for copyright infringement pursuant to 17 U.S.C. § 501(a). [*Id.* at ¶¶ 57-78] Plaintiff requests an injunction prohibiting Defendants from infringing on Plaintiff's works and damages. [*Id.* at 14] On September 8, 2025,

4

Defendants filed the Motions seeking dismissal of Plaintiff's claim.  [##15; 16]  Plaintiff has responded to the Motions [##20; 21] and Defendants have replied [##24; 25].

## II.    LEGAL STANDARD

### A.    Federal Rule of Civil Procedure 12(b)(2)

Federal Rule of Civil Procedure 12(b)(2) permits a party to move to dismiss alleged claims against them for lack of personal jurisdiction. "Where the court's jurisdiction is contested, the plaintiff has the burden of proving jurisdiction exists." *AST Sports Sci., Inc. v. CLF Distrib. Ltd.*, 514 F.3d 1054, 1056 (10th Cir. 2008) (citing *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995)).  "Where a district court considers a pre-trial motion to dismiss for lack of personal jurisdiction without conducting an evidentiary hearing, the plaintiff need only make a prima facie showing of personal jurisdiction to defeat the motion." *Id.* at 1056-57 (citing *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998); *Wenz*, 55 F.3d at 1505).  "The plaintiff may make this prima facie showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant." *OMI Holdings, Inc.*, 149 F.3d at 1091.  The Court also accepts the well-pleaded facts in the complaint "as true to the extent they are uncontroverted by the defendant's affidavits." *Wenz*, 55 F.3d 1503, 1505 (10th Cir. 1995). "If the parties present conflicting affidavits, all factual disputes must be resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party." *Id.* (quotation omitted).  "In order to defeat a plaintiff's prima facie showing of jurisdiction, a defendant must present a compelling case demonstrating that the presence of some other considerations would render jurisdiction unreasonable." *OMI Holdings, Inc.*, 149 F.3d at 1091 (quotation omitted).

**B.    Federal Rule of Civil Procedure 12(b)(6)**

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  In deciding a motion under Rule 12(b)(6), a court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff."  *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (alteration in original) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)).  Nonetheless, a plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S.  544, 555 (2007).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S.  662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  Plausibility refers "to the scope of the allegations in a complaint:  if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'"  *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir.  2008) (quoting *Twombly*, 550 U.S.  at 570).  "The burden is on the plaintiff to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief."  *Id.*  (quoting *Twombly*, 550 U.S.  at 556).  The ultimate duty of the court is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed."  *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir.  2007).

### III.    ANALYSIS

#### A.    The Rule 12(b)(2) Motion

Defendant Hammadi argues that this Court lacks personal jurisdiction over him. [*See* #15]  Plaintiff argues that the Court may assert personal jurisdiction over Defendant Hammadi either based on Federal Rule of Civil Procedure 4(k)(2) or 4(k)(1).  [*See* #21] The Court addresses each Subsection below.

#### 1.    Federal Rule of Civil Procedure 4(k)(2)

Federal Rules of Civil Procedure 4(k)(2) provides:

> For a claim that arises under federal law, serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if: (A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (B) exercising jurisdiction is consistent with the United States Constitution and laws.

This Rule "serves as a federal long-arm statute, which allows a district court to exercise personal jurisdiction over a foreign defendant whose contacts with the United States, but not with the forum state, satisfy due process." *Archangel Diamond Corp. Liquidating Tr. v. OAO Lukoil*, 75 F. Supp. 3d 1343, 1360-61 (D. Colo. 2014) (quoting *Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com De Equi. Medico*, 563 F.3d 1285, 1296 (Fed. Cir. 2009)), *aff'd sub nom. Archangel Diamond Corp. Liquidating Tr. v. Lukoil*, 812 F.3d 799 (10th Cir. 2016).  Courts within the District of Colorado have held that the burden of showing that the defendant is not subject to jurisdiction in any state's courts of general jurisdiction falls on the defendant.  *Id.* at 1362-63.  Accordingly, "[a] defendant who wants to preclude use of Rule 4(k)(2) has only to name some other state in which the suit could proceed."  *Id.* (quoting *ISI Int'l, Inc. v. Borden Ladner Gervais LLP*, 256 F.3d 548, 552 (7th Cir. 2001)).

Here, Defendant Hammadi has precluded the use of Rule 4(k)(2). Defendant Hammadi asserts that he is subject to general jurisdiction in the courts of Virginia and provides an affidavit stating that he consents to personal jurisdiction in the Eastern District of Virginia. [##25 at 5; 25-1] Accordingly, personal jurisdiction cannot be asserted against Defendant Hammadi under Rule 4(k)(2) because Defendant Hammadi is subject to jurisdiction in another state's courts of general jurisdiction.

### 2.    Federal Rule of Civil Procedure 4(k)(1)

Pursuant to Federal Rule of Civil Procedure 4(k)(1), "[s]erving a summons or filing a waiver of service establishes personal jurisdiction over a defendant: (A) who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." Fed. R. Civ. P. 4(k)(1)(A). "Colorado's long-arm statute . . . confers the maximum jurisdiction permissible consistent with the Due Process Clause." *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008) (citing *Archangel Diamond Corp. v. Lukoil*, 123 P.3d 1187, 1193 (Colo. 2005)).

"[I]n federal question cases, personal jurisdiction flows from the Due Process Clause of the Fifth Amendment." *Peay v. BellSouth Med. Assistance Plan*, 205 F.3d 1206, 1210 (10th Cir. 2000) (citations omitted). "The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts ties, or relations.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-72 (1985) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945)). A "court may exercise personal jurisdiction over a nonresident defendant only so long as there exist 'minimum contacts' between the defendant and the forum State." *Word-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980).

The "minimum contacts" standard may be met in two ways: through asserting specific jurisdiction or general jurisdiction.  A court may assert specific jurisdiction over a nonresident defendant "if the defendant has purposefully directed his activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities." *Burger King*, 471 U.S. at 472 (internal citations and quotations omitted). "Additionally, exercising personal jurisdiction over defendants must always be consonant with traditional notions of fair play and substantial justice." *Dudnikov*, 514 F.3d at 1071.  "Where a court's exercise of jurisdiction does not directly arise from a defendant's forum-related activities, the court may nonetheless maintain general personal jurisdiction over the defendant based on the defendant's general business contacts with the forum state."  *OMI Holdings, Inc.*, 149 F.3d at 1091 (emphasis omitted) (citing *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 415 (1984)).

Defendant Hammadi initially argues that Plaintiff has not pled any acts with respect to Defendant Hammadi in its claim for personal jurisdiction, thus failing to successfully plead facts which could pierce the corporate veil.  [#15 at 5-7]  "A claim for copyright infringement may be asserted against a stockholder or officer of a corporation who is responsible for his corporation's infringing activities."  *Feder v. Videotrip Corp.*, 697 F. Supp. 1165, 1177 (D. Colo. 1988) (citing *Lottie Joplin Thomas Tr. v. Crown Publishers, Inc.*, 465 F. Supp. 531, 537 (S.D.N.Y. 1977)).  As a result, Defendant's "argument regarding piercing the corporate veil is misguided." *Pandaw Am., Inc. v. Pandaw Cruises India Pvt. Ltd.*, 842 F. Supp. 2d 1303, 1314 (D. Colo. 2012).  Rather, when claims such as copyright or trademark infringement are alleged, the Court "does not undertake the traditional veil piercing analysis" because an officer of a corporation may be directly liable

for such a claim "based on the individual's knowledge of and participation in the infringing conduct." *Id.* (citations omitted). An "actual intent to infringe is not necessary for liability under the [Copyright] Act." *Feder*, 697 F. Supp. at 1177 (citing *Lottie Joplin Thomas Tr.,* 465 F. Supp. at 537). Instead, "liability may be imposed on a corporate officer who had no knowledge of the infringement, but who had: (1) the right and ability to supervise the infringing activity; and (2) a direct financial interest in such activity." *Id.* (citing *Lottie Joplin Thomas Tr.,* 465 F. Supp. at 537); *see also Diversey v. Schmidly*, 738 F.3d 1196, 1204 (10th Cir. 2013) ("[A] defendant can also be secondarily liable for another's copyright infringement under principles of vicarious and contributory liability."). [3]

Plaintiff alleges that Defendant Hammadi is the founder, CEO, and sole member of Defendant Jersey Nation. [#1 at ¶ 4] The Court therefore has little trouble finding that Defendant Hammadi had the right to supervise the infringing activity and had a direct financial interest in the activity. In such circumstances, courts assess whether they have personal jurisdiction over an individual officer or director defendant using the same reasoning as they would for determining whether the court has personal jurisdiction over the entity for which the individual defendant holds an officer or director role. *See Pandaw Am., Inc.*, 842 F. Supp. 2d at 1314. The Court will thus proceed in the same manner here.

The Court first considers whether it has general personal jurisdiction over Defendant Hammadi. To find that general jurisdiction exists, courts require that a plaintiff "demonstrate the defendant's 'continuous and systematic general business contacts'"

---

[3] Defendant Hammadi also argues that Plaintiff has failed to successfully plead that Jersey Nation is merely an alter ego of Defendant Hammadi. [#15 at 5-7] However, this type of pleading is unnecessary because, as previously described, officers of corporations can be liable for infringement under United States copyright laws based on their personal knowledge of and participation in the infringing conduct.

with the forum state.  *OMI Holdings, Inc.*, 149 F.3d at 1091 (quoting *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996)).  Plaintiff has not done so here.

Plaintiff alleges that Defendant Hammadi had certain interactions with Colorado, including that Defendant Hammadi retained a Colorado attorney to file a federal trademark application on behalf of Jersey Nation and to respond to legal documents regarding Defendants' Jersey.  [#1 at ¶ 8]  Plaintiff also alleges that Defendants have imported, distributed, offered for sale, displayed, advertised, and sold an unidentified number of infringing products in Colorado and have prosecuted intellectual property rights in Colorado.  [*Id.* at ¶¶ 8, 10]   Defendants operate a website which Plaintiff maintains "reveal[s] specifically intended interactions with residents of the State of Colorado."  [*Id.* at ¶ 10]

An individual instance of retaining a Colorado attorney is not sufficient to find that Defendant Hammadi has systematic and continuous business contacts with the state. And with respect to the products sold by Defendants, the Complaint does not make clear how many, if any, of Defendant Jersey Nation's products were sold in Colorado. Accordingly, Plaintiff has not established that Defendants had systematic and continuous business contacts with Colorado.  Indeed, Defendant Hammadi asserts that Defendant Jersey Nation is not even licensed to do business in Colorado.  [#15 at 9]

Nor does Defendants' operation of a website establish general personal jurisdiction in Colorado.  "A website will subject a defendant to general personal jurisdiction only when the defendant has actually and deliberately used its website to conduct commercial transactions on a sustained basis with a substantial number of residents of the forum." *Shrader v. Biddinger*, 633 F.3d 1235, 1243 (10th Cir. 2011) (emphasis omitted) (quoting

*Smith v. Basin Park Hotel, Inc.*, 178 F.Supp.2d 1225, 1235 (N.D. Okla. 2001)).   For example, courts have held that twelve internet sales for less than $14,000 over the course of eight years is insufficient to establish general jurisdiction.   *Campbell Pet Co. v. Miale*, 542 F.3d 879, 884 (Fed. Cir. 2008).   Here, Plaintiff has not alleged any facts related to the number of sales from Defendants' website that occurred in Colorado.   Thus, Plaintiff has not established that Defendants, via the website, had systematic and continuous business contacts with Colorado.   As a result, Plaintiff has not established that the Court has general personal jurisdiction over Defendant Hammadi.

The Court next considers whether it has specific personal jurisdiction over Defendant Hammadi.   Once again, a court may assert specific jurisdiction over a nonresident defendant "if the defendant has purposefully directed his activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities."   *Burger King*, 471 U.S. at 472 (internal citations and quotations omitted).   Here, the trademark registration is irrelevant to the copyright infringement claim alleged in the Complaint, and thus it cannot be used to support an assertion of specific jurisdiction.   And Plaintiff has not alleged that Defendants purposely directed any other activities at Colorado residents or that the alleged injuries arise out of or relate to those activities because it did not provide any information about the number of infringing products that were imported, distributed, or sold in Colorado.   Plaintiff alleges that Defendant may have made more than $1,000,000 on sales of Defendants' Jersey [#1 at ¶ 31], but it is unclear how many, if any, of these sales occurred in Colorado.   Though Plaintiff alleges that Defendants employed targeted advertising through Google to "users located in Colorado" [#1 at ¶ 29], it is unclear if targeted advertising was used generally

for all Google users or if Colorado was specifically targeted.  In fact, Defendant Hammadi argues that Defendant Jersey Nation's advertising via Google is nationwide, including in countries such as Australia and the United Kingdom.  [#15 at 12]  The Complaint simply fails to provide any information as to whether any Colorado resident ever saw an advertisement, display, or offer for sale of any product sold by Defendant Jersey Nation, or whether any Colorado resident actually purchased a Jersey Nation product.  Thus, the Complaint fails to demonstrate that Defendant Hammadi purposely directed activities at Colorado or that the alleged infringement injuries arose out of activities in Colorado.

Finally, Plaintiff argues that the Court may exercise personal jurisdiction over Defendant Hammadi because Jersey Nation consented to suit in Colorado and Defendant Hammadi was a "primary participant in the activities forming the basis of jurisdiction over the corporation."  [#21 at 17 (quoting *Application to Enforce Admin. Subpoenas Duces Tecum of the SEC v. Knowles*, 87 F.3d 413, 418 (19th Cir. 1996))]  But the primary participant theory merely permits a court to exercise jurisdiction over employees who were primary participants in the activities forming the basis of jurisdiction over the business entity.  *Knowles*, 87 F.3d at 418 (citing *Calder v. Jones*, 465 U.S. 783, 790 (1984)).  The rationale is that personal jurisdiction would extend over the employee "at least as far as matters relating to the activities of the [entity] in the forum in which he was a primary participant" because the employee "purposefully directed his activities on behalf of [the entity] toward the [forum]."  *Id.*  Here, as set forth above, Plaintiff has not shown that Jersey Nation (or Defendant Hammadi acting on behalf of Jersey Nation) purposefully directed any activities toward Colorado.  Instead, Defendant Jersey Nation

merely consented to allow suit against it in Colorado. Thus, the primary participant theory does not apply.

For the foregoing reasons, the Court finds that it lacks personal jurisdiction over Defendant Hammadi and GRANTS the Rule 12(b)(2) Motion [#15].[4]

### B.   The Rule 12(b)(6) Motion

Defendant Jersey Nation argues in the Rule 12(b)(6) Motion that Plaintiff fails to state a claim for copyright infringement in the Complaint.[5]   [*See* #16]   "To establish [copyright] infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Blehm v. Jacobs*,

---

[4] The Court recognizes that Plaintiff requested limited discovery and/or an evidentiary hearing on the question of personal jurisdiction if the Court doubted the sufficiency of Plaintiff's jurisdictional showing. [#21 at 19]   The Court declines this request. "District courts have discretion to hold or deny an evidentiary hearing to determine personal jurisdiction." *Fireman's Fund Ins. Co. v. Thyssen Mining Constr. of Canada, Ltd.*, 703 F.3d 488, 494 (10th Cir. 2012). And where, as here, a plaintiff fails to make a prima facie showing of personal jurisdiction, the Court is within its discretion to deny an evidentiary hearing. *Id.*; *see also OMI Holdings, Inc.*, 149 F.3d at 1091 (where a district court does not hold an evidentiary hearing, the plaintiff need only make a prima facie showing of personal jurisdiction). Plaintiff has not made a prima facie showing here. Plaintiff has not provided affidavits or other written materials that, if true, would support jurisdiction over the Defendant. Indeed, Plaintiff has not provided any facts that would indicate that the Court has either general or specific jurisdiction over Defendant Hammadi. And the personal jurisdiction requirement flows from the Due Process Clause of the Fifth Amendment, which requires that a Court protect "an individual's liberty interest in avoiding the burdens of litigating in an unfair or unreasonable forum." *Peay*, 205 F.3d at 1211 (quotation omitted). The Court thus does not find it reasonable or proper to order an evidentiary hearing in the District of Colorado when Defendant Hammadi is a citizen of Australia and Plaintiff has not made a prima facie showing that Defendant Hammadi is subject to Colorado jurisdiction.

[5] Though both Defendant Jersey Nation and Defendant Hammadi filed the Rule 12(b)(6) Motion, the Court assesses the Rule 12(b)(6) Motion only with respect to Defendant Jersey Nation because, as previously stated, the Court finds that it does not have jurisdiction over Defendant Hammadi. Accordingly, to the extent that the Rule 12(b)(6) Motion seeks dismissal of the claim against Defendant Hammadi, the Court finds that the Rule 12(b)(6) Motion is moot.

702 F.3d 1193, 1199 (10th Cir. 2012) (quotation omitted).  "The copying element of an infringement claim has two components."  *Id.*  "First, a plaintiff must demonstrate that the defendant copied the plaintiff's work 'as a factual matter.'"  *Id.* (quoting *Gates Rubber Co. v. Bando Chem. Indus., Ltd.*, 9 F.3d 823, 832 (10th Cir. 1993)).  "Second, the plaintiff must establish 'substantial similarity' between the allegedly infringing work and the elements of the copyrighted work that are legally protected."  *Id.* (quoting *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 942-43 (10th Cir. 2002)).  The Court addresses each element in turn.

### 1.    Ownership of a Valid Copyright

Defendant Jersey Nation first argues that Plaintiff has not alleged ownership and existence of a valid copyright.  [#16 at 5-6]  In the Complaint, Plaintiff alleges that it has a federal copyright registration on Plaintiff's Jersey and provides Registration No. VA0002386198.  [#1 at ¶ 18]  Nonetheless, Defendant Jersey Nation argues that this is insufficient because Plaintiff failed to include a certificate of registration, which constitutes prima facie evidence of a valid copyright.  [#16 at 5]  The requirement that a party produce evidence of existence of a valid copyright is often discussed in the context of a motion for summary judgment, which is not the type of motion that is before the Court.  *See, e.g., Palladium Music, Inc. v. EatSleepMusic, Inc.*, 398 F.3d 1193, 1196-97 (10th Cir. 2005) (describing the evidence of ownership of a valid copyright produced by the plaintiff when assessing a summary judgment motion filed by the defendants); *State Regul. Registry, LLC v. Bartholomew*, No. 17-cv-01834-PAB-NRN, 2019 WL 7290934, at *6 (D. Colo. Sept. 27, 2019) (describing the evidentiary burden shifting framework that is applicable when a plaintiff presents a copyright certificate of registration).  Defendant Jersey Nation has not

cited any cases that require a Plaintiff to include the certificate of registration with its complaint in order to plausibly allege ownership of a valid copyright.  [#16]

Federal Rule of Civil Procedure 8(a)(2) requires a pleading to contain only "a short and plain statement of the claim that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (quotation omitted).  "[E]ven post-*Twombly*, Rule 8 requires only the pleading of the basic elements of an infringement claim, albeit allegations that rise above the speculative level. There is no heightened pleading requirement for copyright-infringement claims."  6 Patry on Copyright § 19:3 (footnotes omitted); *see also Santa Fe Goldworks, Inc. v. Bella Jewelry, LLC*, No. 23-602 KK/JMR, 2024 WL 3161893, at *4 (D.N.M. June 25, 2024) (same); *FloaTEC, LLC v. Magnuson*, No. H-13-2313, 2013 WL 5873363, at *3 (Oct. 30, 2013) (same).

Thus, under Rule 8, all that is required to establish copyright ownership at the pleading stage of a copyright infringement claim is a plausible factual assertion; no extrinsic evidence is necessary.[6]  *See*, *e.g.*, *Wilson v. Brennan*, No. Civ 07-457 LCS/LAM, 2008 WL 11337293, at *1 (D.N.M. Jan. 7, 2008) (finding that a complaint alleging that copyrights were registered, including registration numbers, sufficiently met the requirement that a plaintiff plead ownership of a valid copyright);  *Adams v. Jackson*, 218 F. Supp. 2d 1006, 1011-12 (N.D. Ind. July 19, 2002) (finding that plaintiffs need not attach a copy of a valid federal copyright registration or provide evidence of such registration under the notice pleading standard and that any argument to the contrary is "groundless

---

[6] Though production of extrinsic evidence may be one way to properly plead ownership of a valid copyright, and has been done so in numerous cases, it is not required.

to the point of being sanctionable"). Here, Plaintiff alleges ownership of a valid copyright and provides the registration number. [#1 at ¶ 18] This is sufficient to give Defendant Jersey Nation fair notice of the claims against it.

Defendant Jersey Nation further argues that Plaintiff failed to exclude pre-existing or copyrightable materials from the registration, that Plaintiff's Jersey is derivative so it is unclear what elements are validly copyrighted, and that it is possible that Plaintiff may not have licensed the derivative elements of Plaintiff's Jersey.[7] [#16 at 5-6] Defendant Jersey Nation contends that, as a result, Plaintiff has not adequately alleged the existence of a valid copyright. [*Id.*] As previously noted, however, Rule 8 requires only that Plaintiff plead the basic elements of an infringement claim above a speculative level. Plaintiff alleges that it owns a valid copyright and provides the registration number. This is a plausible assertion of ownership of a valid copyright. The motion to dismiss stage is not the appropriate time for the Court to determine, with no evidence before it, whether

---

[7] Defendant Jersey Nation cites *Wilson v. Brennan* for the proposition that a copyright registration is not entitled to a presumption of validity when there is a material, inadvertent omission from the registration. [#24 at 6-7 (citing *Wilson*, 666 F. Supp. 2d 1242, 1251-52 (D.N.M. 2009)]. However, Defendant again appears to misunderstand the standard required to survive a Rule 12(b)(6) motion to dismiss. *Wilson* was not decided at the motion to dismiss stage and the court had numerous pieces of evidence before it when deciding whether the plaintiff owned a valid copyright. *See Wilson*, 666 F.Supp.2d at 1251-57. The determination of whether a copyright registration should be deemed invalid due to a material, inadvertent omission is particularly inappropriate at the motion to dismiss stage. Indeed, "[e]rrors in [a copyright] application do not necessarily render a resulting registration invalid. The Copyright Act includes a safe-harbor provision, which provides" that a certificate of registration satisfies the requirements of sections 411 and 412 of the Copyright Act, even if the registration contains inaccuracies, unless: (1) the inaccurate information was included with the knowledge that it was inaccurate, and (2) the inaccuracy of the information, if known, would have caused the Register of Copyrights to refuse registration. *Real World Media LLC v. Daily Caller, Inc.*, 744 F.Supp.3d 24, 33-34 (D.D.C. 2024) (citing 17 U.S.C. Section 411(b)). The Court cannot make such a judgment without further evidence. Instead, to decide the Rule 12(b)(6) Motion at issue here, the Court need only determine the plausibility of Plaintiff's allegations.

Plaintiff obtained a valid license to create an allegedly derivative work.  Indeed, derivative works can be copyrightable if "produced with the permission of the copyright owner of the preexisting work or its duly authorized licensee."  *Palladium Music, Inc.*, 398 F.3d at 1197 (citing 17 U.S.C. § 103(a)).  It is possible that evidence could later reveal that certain elements of Plaintiff's Jersey were not validly copyrighted or that a license was not obtained to create a derivative work.  However, at this stage in the litigation, Plaintiff has met its burden of alleging that it owns a valid copyright.

### 2.  Copying

As set forth above, to establish the copying element a plaintiff must: (1) demonstrate that the defendant copied the plaintiff's work as a factual matter, and (2) establish substantial similarity between the allegedly infringing work and the elements of the copyrighted work that are legally protected. *Blehm*, 702 F.3d at 1199.  The Court addresses each component below.

### a.  Copying as a Factual Matter

Defendant Jersey Nation argues that Plaintiff has not plausibly alleged that Defendant Jersey Nation engaged in direct copying of Plaintiff's Jersey.  [#16 at 7-8] Defendant Jersey Nation argues that, because both jerseys were inspired by the film *Christmas Vacation*, Plaintiff has not plausibly alleged that Defendant Jersey Nation copied Plaintiff's Jersey rather than the film itself.  [*Id.*]  The Court disagrees.  Plaintiff need not plead that the only possible explanation for the creation of Defendants' Jersey is that Defendant Jersey Nation directly copied Plaintiff.  "If there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint . . . survives a motion to dismiss under Rule

12(b)(6)."  *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) (quoted favorably in *Rupp v. Pearson*, 658 F. App'x 446, 449 (10th Cir. 2016)); *Martin v. United States*, No. 21-cv-02107-NYW, 2022 WL 2274706, at *11 (D. Colo. June 23, 2022) (same).

Plaintiff plausibly alleged that Defendant Jersey Nation copied Plaintiff's Jersey. "[A] plaintiff can indirectly prove copying by demonstrating that the defendant had access to the plaintiff's copyrighted work and that there are probative similarities between the copyrighted material and the allegedly copied material."  *Sportsmans Warehouse, Inc. v. Fair*, 576 F. Supp. 2d 1175, 1181 (D. Colo. 2008) (citing *Country Kids 'N City Slicks, Inc. v. Sheen*, 77 F.3d 1280, 1284 (10th Cir. 1996)).  To establish access to the copyrighted work, "a plaintiff must show that 'the defendant had a reasonable opportunity to view or an opportunity to copy the allegedly infringed work.'"  *State Regul. Registry, LLC*, 2019 WL 7290934, at *7 (quoting *La Resolana Architects, PA v. Reno, Inc.*, 555 F.3d 1171, 1178 (10th Cir. 2009)).  Probative similarities are those "similarities that, in the normal course of events, would not be expected to arise independently in the two works."  *Civility Experts Worldwide v. Molly Manners, LLC*, 167 F. Supp. 3d 1179, 1190 (D. Colo. 2016) (quoting 4-13 Nimmer on Copyright § 13.01[b]).

Plaintiff alleges that it operates a website that has sold Plaintiff's Jersey for several years.  [#1 at ¶¶ 13, 16]  Plaintiff provides a link to the website which leads to a public page displaying an image of Plaintiff's Jersey, where it is offered for sale.  [*Id.* at ¶ 17]  Plaintiff alleges that the product name and URL handle for the product page of Defendants' Jersey was identical to that of Plaintiff's Jersey prior to Plaintiff sending Defendants a cease-and-desist letter.  [*Id.* at ¶ 46]  Based on these allegations, one could plausibly infer that Defendant Jersey Nation had access to Plaintiff's Jersey.  Defendants

had internet access—and indeed operated their own website—and displayed a URL and online name for the jersey that was identical to that of Plaintiff's Jersey. This creates a plausible inference that Defendants had a reasonable opportunity to view Plaintiff's Jersey via Plaintiff's website.

As to the similarities between the jerseys, Plaintiff identifies several prominent elements of Defendants' Jersey that are identical or similar to that of Plaintiff's Jersey. [*Id.* at ¶ 25] Again, Plaintiff is not required to do more at this stage than make a plausible allegation that the similarities between the jerseys would not be expected in the normal course of events. Plaintiff has alleged, both in words and through images of the two jerseys, that the jerseys feature the same name, the same numbers and location of the numbers, the same striping pattern, and a similar moose with a hat on its head in the same location. [*See Id.* at 5-7] In the Complaint, the Court is presented with two jerseys that share nearly all their features. This is enough to plausibly allege there are probative similarities between the two jerseys.

Defendant Jersey Nation additionally argues that the elements that Plaintiff alleges Defendants copied are all either non-copyrightable or not legally owned by Plaintiff. [#16 at 9-11] Defendant Jersey Nation individually goes through each element of Plaintiff's Jersey and identifies each element, standing on its own, as non-copyrightable or in the public domain. [*Id.*] And it is true that "legal protection does not extend to all aspects of a copyrighted work." *Blehm*, 702 F.3d at 1200. But this does not mean that any use of public domain elements is non-copyrightable. For example, "a sweater designer can have copyright protection over an original way of using squirrels as a design element in conjunction with fall colors, stripes, and panels, even though those elements individually

constitute ideas in the public domain."  *Id.* at 1202 (citing *Knitwaves, Inc. v. Lollytogs Ltd.*, 71 F.3d 996, 1004 (2d Cir. 1995)).  In such a case, "the author's original contributions" including "the original way in which the author has selected, coordinated, and arranged the elements of his or her work" are protectible.  *Knitwaves, Inc.*, 71 F.3d at 1004 (quotations omitted).  Thus, original selection of dominant design elements, choosing a color palette to go along with such design elements, and arrangement in the location of such design elements and colors can be protected by copyright even if patterns or design elements standing alone could not.  *Id.*  Accordingly, the argument that individual elements of Plaintiff's Jersey standing alone might be considered non-copyrightable or in the public domain does not foreclose the possibility that: (1) Plaintiff received a valid copyright in Plaintiff's Jersey for an original manner of using certain elements in the public domain, and (2) Defendants' Jersey and Plaintiff's Jersey have probative similarities.

Defendant nonetheless argues that because the moose featured on the two jerseys are wearing two different styles of hats, this fact alone demonstrates that Defendant Jersey Nation did not copy Plaintiff's Jersey and instead was inspired by a different scene of the original *National Lampoon's Vacation* film than Plaintiff's Jersey. [#16 at 10]   But as previously stated, Plaintiff need not preclude all alternative explanations for an action in the Complaint to survive a Rule 12(b)(6) motion to dismiss. Plaintiff need only advance a plausible explanation.  In this case, the two moose displayed prominently on the front of the competing jerseys are similar and are both wearing Christmas themed hats.  [#1 at ¶¶ 14, 25]  Though it is possible that Defendant Jersey Nation was inspired by a particular scene in the film *National Lampoon's Vacation*, it is also plausible that Defendant Jersey Nation had access to and copied the design on

Plaintiff's Jersey based on the facts previously described. This is enough to survive a Rule 12(b)(6) motion to dismiss.

### b.    Substantial Similarity

Defendant Jersey Nation also argues that Plaintiff has failed to plausibly show that the two jerseys are substantially similar. [#16 at 11-12] Defendant argues that every element Plaintiff alleged to contribute to the jerseys' substantial similarity should be removed in the abstraction-filtration-comparison test. [*Id.*] Specifically, Defendant Jersey Nation argues that: (1) the moose with a Christmas stocking is an idea removed as an abstraction, (2) the hockey jersey style of the two jerseys is an abstraction, and (3) the stripes, name, and numbers on the jerseys are non-copyrightable subject matter properly removed under the filtration test. [*Id.*]

The Tenth Circuit has used an abstraction-filtration-comparison test to determine which elements of a copyrighted work are protectable. *Gates Rubber Co.*, 9 F.3d at 834. However, "[n]ot every case requires an extensive abstraction-filtration[-]comparison analysis." *Mitel, Inc. v. Iqtel, Inc.*, 124 F.3d 1366, 1372 (10th Cir. 1997). Indeed, in some recent cases, the Tenth Circuit has refrained from using the abstraction-filtration-comparison analysis at all when assessing visual works, noting that the abstraction-filtration-comparison analysis is "especially well-suited to the dissection of computer programs." *Blehm*, 702 F.3d at 1200 n.4 (citation omitted). Nevertheless, even in cases in which the abstraction-filtration-comparison analysis is not used, courts note that the "goal is the same: separating unprotectable ideas from protectable expression in [a plaintiff's] copyrighted works and comparing the remaining protectable expression to [a

defendant's allegedly infringing work] to determine whether they are substantially similar." *Id.*

When using the abstraction-filtration-comparison test, a court first "separate[s] the ideas (and basic utilitarian functions), which are not protectable, from the particular expression of the work." *Country Kids N' City Slicks, Inc.*, 77 F.3d at 1284-85. After this process, the Court must "compare the remaining protected elements to the allegedly copied work to determine if the two works are substantially similar." *Id.* at 1285. Substantial similarity is a mixed question of law and fact. *Blehm*, 702 F.3d at 1199. "[T]he idea/expression distinction is 'the most complex part of the substantial similarity inquiry.'" *Id.* at 1201 (quoting *Murray Hill Publ'ns Inc. v. Twentieth Century Fox Film, Corp.*, 361 F.3d 312, 318 (6th Cir. 2004)).

In *Country Kids*, the Tenth Circuit held that "[t]he idea of a wooden doll is not copyrightable, nor are 'any basic and utilitarian aspects of the dolls, such as the shape of a human body and standard . . . doll poses.'" *Id.* (quoting *Country Kids N' City Slicks, Inc.*, 77 F.3d at 1285). "Similarly, a copyright owner has no monopoly over the idea of 'fashion dolls with a bratty look or attitude, or dolls sporting trendy clothing.'" *Id.* (quoting *Mattel, Inc. v. MGA Ent., Inc.*, 616 F.3d 904, 916 (9th Cir. 2010)). Copyright instead protects "particularized expression." *Id.* "For example, although a copyright owner has no monopoly over the idea of a muscular doll in a standard pose, the owner may have a valid infringement claim for the copying of the 'particularized expression of that idea,' such as 'the decision to accentuate certain muscle groups relative to others.'" *Id.* (quoting *Mattel, Inc. v. Azrak-Hamway Int'l, Inc.*, 724 F.2d 357, 360 (2d Cir. 1983)). As another example, though architects cannot receive copyright protection for using "domes, wind-

towers, parapets and arches" in general, architects could protect "the combination of common architectural elements and use of specific designs" if those elements constitute original expression. *Id.* at 1201-02 (citing *Sturdza v. United Arab Emirates*, 281 F.3d 1287, 1297 (D.C. Cir. 2002)).

Based on this framework, the Court finds that Plaintiff has plausibly shown that Plaintiff's Jersey and Defendants' Jersey are substantially similar. The Court finds *Sturdza* particularly insightful. While Plaintiff cannot claim a monopoly on common clothing elements such as stripes and numbers, Plaintiff's copyright could protect the combination of common elements and use of specific designs. Plaintiff similarly cannot claim a monopoly on all images of moose with caps on their heads, but Plaintiff's copyright could plausibly protect a jersey with a particular design of a moose in a particular location in combination with other stylistic choices such as color and location of stripes. Plaintiff alleges, and provides an image, of a jersey with common design elements combined together to create a jersey containing a cartoon moose with a Christmas-themed cap centered on the front, the name Griswold on the back and number '00' on the back and sleeves, and red and black striping specifically on the arms and lower half of the jersey. Defendants' Jersey has these same features, in the same combination. Accordingly, the Court finds that Plaintiff has plausibly alleged that the two jerseys are substantially similar. As a result, the Court DENIES the Rule 12(b)(6) Motion.

## IV.   CONCLUSION

For the foregoing reasons, the Rule 12(b)(2) Motion [#15] is **GRANTED** and the Rule 12(b)(6) Motion [#16] is **DENIED** to the extent that it seeks to dismiss the claim against Defendant Jersey Nation. To the extent the Rule 12(b)(6) Motion seeks to dismiss

the claim against Defendant Hammadi, it is **DENIED AS MOOT** in light of the Court's ruling on the Rule 12(b)(2) Motion.

DATED:   February 4, 2026                          BY THE COURT:


                                                    s/Scott T.  Varholak
                                                    Chief United States Magistrate Judge